IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| M.W. | ) **PLAINTIFF DEMANDS TRIAL BY JURY** |
| | ) |
| Plaintiff | ) |
| | ) Case No.:    4:10-CV-00914 |
| vs. | ) |
| | )              Claims |
| CITY OF WENTZVILLE, CALVIN NEVELS, | ) Count I – Violation of 42 U.S.C. § 1983 |
| and K.B. | ) *"State Created Danger"* |
| | ) Count II – Violation of Missouri Common Law |
| Defendants. | ) *Negligence* |

## FIRST AMENDED COMPLAINT

JURISDICTION AND VENUE

1.      Count I of this action arises under the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. §§ 1983 and 1988.   Count I is brought against Defendants City of Wentzville and Calvin Nevels, police officer for the City of Wentzville.  Count II of this action arises under the common law of Missouri.  Count II is brought against Defendant K.B.

2.      This Court has jurisdiction over the federal statutory and civil rights claim by virtue of 28 U.S.C. §§ 1331 and 1443.  The Court has supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367.

3.      Venue is proper before this Court by virtue of 28 U.S.C. § 1391.

PARTIES

4.      Plaintiff M.W. was at all times relevant herein a female citizen of the United States and a resident of St. Charles County, Missouri.

5.      Defendant City of Wentzville is a political subdivision of the state of Missouri located in St. Charles County, Missouri.  Defendant City of Wentzville at all times herein had

taken its actions against Plaintiff through agents and employees acting within the scope and course of their employment and under color of law.

6.      Defendant Calvin Nevels was at all times relevant herein a police officer of the Wentzville Police Department.  At all times relevant herein Defendant Nevels acted within the scope and course of his employment and under color of law.  He is sued in his official capacity only.

7.      Defendant K.B. is Kelly Blanchard, homeowner of the residence identified herein at 521 Cheryl Ann Drive, Wentzville, MO  63385.

<u>FACTS COMMON TO ALL COUNTS</u>

8.      On January 15, 2009, Defendant Nevels received a radio dispatch to report to 521 Cheryl Ann, in the City of Wentzville.  The dispatcher informed Defendant Nevels to contact a Mr. Kelly Blanchard who had informed the dispatcher that he had an altercation with his wife earlier in the day, and she was not at home when he returned from work.

9.      Upon arrival at 521 Cheryl Ann, Defendant Nevels observed at that address the following handwritten messages on the mailbox, the garage door, the front door, and the glass storm door, written in crayon and mascara:

"DON'T COME INSIDE"

"WELL YOU ARE A SINGLE PARENT NOW, WHAT DO YOU THINK ABOUT THAT"

"JUST A MOMENTS COURAGE RIGHT KELLY"

"NOW YOU GOT WHAT YOU WANTED"

"YOU GO ELSEWHERE SO U + DAVID DON'T SEE ANYTHING, THEN CALL A FRIEND OR POLICE"

"TAKE DAVID ELSEWHERE"

"YOU SHOULD BE HAPPY"

"LEAVE – CALL POLICE"

"DON'T GO IN THE BASEMENT"

"I FEEL SO STUPID WHAT KIND OF DISEASE DO I HAVE"

"JUST A MOMENTS COURAGE"

10.    Defendant Nevels entered through the front door, passing the mailbox, the garage door, and through the front door and glass storm door. He then spoke with Kelly Blanchard.

11.    Mr. Blanchard informed Defendant Nevels that he had an argument with his wife earlier that day, and had told her he wanted a divorce. He further informed Defendant Nevels that his wife had been acting crazy that day, had previously made a suicide attempt seven (7) years ago, was currently under a doctor's care, and had left suicide/goodbye notes on the kitchen countertop to her various family members. Defendant Nevels read the good-bye notes. Mr. Blanchard insisted to Defendant Nevels that his wife was going to hurt herself. Defendant Nevels specifically noted numerous times during his initial interview that Mr. Blanchard was remarkably "very unemotional".

12.    Also in plain view of Defendant Nevels was a smashed computer. Had Nevels searched or asked, he would have learned that Mr. Blanchard's wife's purse, cell phone, car keys, and only winter coat, were in the house. The wife's car was located four (4) houses up the street, which Defendant Nevels passed to both enter and exit the subdivision.

13.    Defendant Nevels then informed Mr. Blanchard he would report the incident as a domestic disturbance, and put a look-out for her and her vehicle in the surrounding areas. Defendant Nevels then left the residence. After reaching the police station, Defendant Nevels then realized he did not have enough information regarding Mr. Blanchard's wife related to the clothing she might be wearing, places she might go, and who she may contact. Defendant Nevels then returned to 521 Cheryl Ann to talk to Mr. Blanchard again, passing the mailbox, the garage

3

door, the front door, and the glass storm door, which all still had the handwritten notes written on them.

14.   Defendant Nevels entered the residence for the second time, again specifically noting that Mr. Blanchard appeared "very unemotional". Defendant Nevels asked Mr. Blanchard if there were any weapons in the house and would his wife have access to them. Mr. Blanchard responded that there was a gun cabinet in the basement, and he would check to see if any were missing. Defendant Nevels began to proceed to the basement with Mr. Blanchard, and Mr. Blanchard told Defendant Nevels to wait upstairs and he would go check the gun cabinet. After a minute, Mr. Blanchard exclaimed, "Damn it, I have got a .22 caliber handgun missing."

15.   The basement of the residence was an open area with a gun cabinet, and a washer and dryer next to each other. Mr. Blanchard's wife was hanging from the floor joists by a cord, in plain view, above a pool of dried blood, with a .22 caliber bullet through her head, and the handgun lying at her feet.

16.   Mr. Blanchard returned upstairs and told Defendant Nevels nothing about his wife. Defendant Nevels never entered the basement the second time he was at the residence. Defendant Nevels informed Mr. Blanchard he would place a missing person's report on his wife, and then left the residence.

17.   After returning to the police station, Defendant Nevels received a phone call from Plaintiff. She identified herself as the sister of Mr. Blanchard's wife, and asked what information Defendant Nevels had from Mr. Blanchard regarding her sister's whereabouts. Defendant Nevels then informed Plaintiff what Mr. Blanchard had told him, and what Defendant Nevels had observed at the residence.

18.   Plaintiff then informed Defendant Nevels not to trust Mr. Blanchard, and that she would look for her sister at the residence.

19.     Plaintiff and a male companion then drove to the residence at 521 Cheryl Ann to search for her sister.

20.     Upon arriving at the residence, Plaintiff and her male companion observed all the messages left by her sister on the mailbox, garage door, front door, and glass storm door.  After entering, Mr. Blanchard told Plaintiff and her male companion what he had told Defendant Nevels, showed them the suicide/good-bye notes on the kitchen counter, and additional suicide notes in the master bedroom.  Plaintiff then located her sister's purse, car keys, cell phone and only winter coat at the residence.

21.     Because of the notes on the outside of the residence which stated not to enter or go in the basement, Plaintiff and her companion asked Mr. Blanchard if he had been in the basement.  He responded that he had, but that his wife was not there.  Plaintiff and her male companion did not believe Mr. Blanchard and then proceeded to go to the basement.

22.     Upon turning on the basement light, in plain view, was the body of Plaintiff's sister hanging from the floor joist, over a pool of dried blood.  Upon viewing her sister's body, Plaintiff was completely mortified and hysterical.

23.     Plaintiff and her male companion then went upstairs and called the Wentzville Police Department.

24.     Wentzville Lieutenant Emmanuel Borroum immediately arrived at 521 Cheryl Ann, designated the house a crime scene and prohibited any relatives from entering the residence.

25.     Following a complete criminal investigation by the Wentzville Police Department and the City of St. Louis Forensic Laboratory, the cause of death was determined to be suicide. No criminal charges were brought against Mr. Blanchard.  The Wentzville Police Department determined Mr. Blanchard had been merely negligent in not disclosing the presence of his wife's body.

CLAIMS

## COUNT I
## Violation of 42 U.S.C. § 1983 – "State Created Danger"
## (Against Defendants City of Wentzville and Calvin Nevels)

26.     Plaintiff hereby incorporates by reference paragraphs 1-25 as though fully set forth herein.

27.     On January 15, 2009, Defendant Nevels had appeared at 521 Cheryl Ann, Wentzville, Missouri, and observed every warning and every sign that common sense would dictate that a crime had or was occurring at that residence.

28.     Despite the obvious and unavoidable evidence, Defendant Nevels did not secure the residence and treat the residence as a crime scene prohibiting any entry by anyone but trained police officers.  Instead, Defendant Nevels abandoned the crime scene which rendered Plaintiff more vulnerable to viewing the deceased body of her sister.

29.     Defendant Nevels' conduct was committed with deliberate or reckless indifference, callous disregard, or at such an arbitrary level as to shock the conscience, thereby violating Plaintiff's right to substantive due process and her liberty interest in personal security under the Fourteenth Amendment.

30.     Defendant City of Wentzville's conduct of failing to train, monitor and supervise Defendant Nevels in the proper manner of securing a crime scene was committed with deliberate or reckless indifference, callous disregard, or at such an arbitrary level as to shock the conscience, thereby violating Plaintiff's right to substantive due process and her liberty interest in personal security under the Fourteenth Amendment.

31.     As a direct and proximate result of Defendants' actions, Plaintiff has suffered extreme horror, shock, mental and emotional distress, and has been forced to undergo hospitalization and receive continuous medical treatment, incurring the costs of that treatment,

and, a not-yet-determinable amount of future medical treatment. Plaintiff has further incurred the costs of this action, and is entitled to recover reasonable attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendants for compensatory damages, medical expenses, costs of this action, attorney's fees pursuant to 42 U.S.C. §§ 1983 and 1988, and such other and further relief as the Court deems just and proper.

**COUNT II**
**Violation of Missouri Common Law – Negligence**
**(Against Defendant K.B.)**

32.   Plaintiff hereby incorporates by reference paragraphs 1-31 as though fully set forth herein.

33.   Defendant K.B. owed a duty to Plaintiff, as homeowner of the residence at 521 Cheryl Ann, to protect her from dangerous or harmful exposure to viewing the deceased body of her sister.

34.   Defendant K.B. knew or should have known of the presence of his wife's body in the basement of the residence, that Plaintiff would seek to locate her sister at that residence, and, that Plaintiff would suffer severe emotional distress if she viewed the deceased body of her sister.

35.   Defendant K.B. breached his duty to Plaintiff by negligently and accidentally failing to prevent Plaintiff from entering the residence at 521 Cheryl Ann and viewing the deceased body of her sister.

36.   As a direct and proximate result of Defendant K.B.'s negligent acts and omissions, Plaintiff has suffered extreme horror, shock, mental and emotional distress, and has been forced to undergo hospitalization and receive continuous medical treatment, incurring the costs of that treatment, and, a not-yet-determinable amount of future medical treatment. Plaintiff has further incurred the costs of this action.

WHEREFORE, Plaintiff prays for judgment in her favor and against Defendant K.B. for compensatory damages, medical expenses, costs of this action, and such other and further relief as the Court deems just and proper.

Respectfully submitted,

BAGSBY & LEE, L.L.C.


/s/    Larry A. Bagsby
Larry A. Bagsby, #30064
*Attorney for Plaintiff*
1600 Heritage Landing, Suite 201
St. Charles, MO  63303
(636) 928-2121 telephone
(636) 928-3131 facsimile
Larrybagsby@aol.com


WATSON & DAMERON, L.L.P.


/s/    Patrick Berrigan
Patrick Berrigan, #34321
*Co-Counsel for Plaintiff*
2500 Holmes
Kansas City, Missouri 64108
(816) 474-3350 telephone
(816) 221-1636 facsimile
PBerrigan@kctriallawyers.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that a true and correct copy of the foregoing was served this 16th day of August, 2010, by means of electronic filing through the CM/ECF system, to:

Robert J. Krehbiel
KING, KREHBIIEL, HELLMICH,
HACKING & BORBONUS, LLC
2000 South Hanley Road
St. Louis, MO  63144
rkrehbiel@kkhhb.com
*Attorney for Defendants City of Wentzville and Calvin Nevels*

/s/    Larry A. Bagsby